BORMAN v STATE FARM FIRE & CASUALTY CO

Docket No. 96266. Argued April 5, 1994 (Calendar No. 3). Decided
    August 29, 1994.

Dennis Borman, as personal representative of the estate of Lillian
    Roach, deceased, brought an action in the Van Buren Circuit
    Court against State Farm Fire & Casualty Co., to recover for
    the loss of personal property belonging to Roach that was
    destroyed by a fire set by her grandson, Gary Borman, at an
    adult foster care home that he was purchasing on land con-
    tract. The court, William C. Buhl, J., granted summary disposi-
    tion for State Farm, relying on language in the policy that
    excluded coverage for intentional wrongful acts by any insured.
    The Court of Appeals, SHEPHERD, P.J., and BRENNAN and L. P.
    BORRELLO, JJ., reversed, relying on Morgan v Cincinnati Ins Co,
    411 Mich 267; 307 NW2d 53 (1981), which held that the
    language of the standard policy applies only to an insured who
    commits the fraud and has no application to any other person
    insured under the policy (Docket No. 142956). The defendant
    appeals.

    In an opinion by Justice LEVIN, joined by Chief Justice
CAVANAGH, and Justices BOYLE and MALLETT, the Supreme
Court held:

    The provisions of the insurance policy in this case, insofar as
they deny coverage to an insured who is innocent of wrong-
doing by another insured, are inconsistent with, and contrary
to, the provisions of the standard policy and thus void, insofar
as fire insurance coverage is involved. Therefore, State Farm is
subject to liability under the policy to the plaintiff's decedent,
who was an innocent insured, in the same manner and to the
same extent as if the inconsistent provisions were not con-
tained in the policy.

    1. The standard insurance policy prescribed by MCL
500.2832; MSA 24.12832 provides that the entire policy is void
if, whether before or after a loss, the insured has wilfully
concealed or misrepresented any material fact or circumstance
concerning the insurance or the subject of the insurance, or the
interest of the insured, or any fraud or false swearing by the
insured. Morgan, held that the provision "the insured" voided a
policy only with respect to an insured who committed the fraud

and that the provision did not apply to any other person described in the policy as an insured and thus did not bar the claim of an insured who was innocent of fraud.

2. In this case, because the provisions of the homeowner's policy cover the same subject matter as the standard policy as construed by *Morgan,* and the provisions of the policy are inconsistent with the provisions of the standard policy, the provisions are absolutely void. Thus, State Farm is liable to Lillian Roach's estate, insofar as fire insurance coverage is involved, in the same manner and to the same extent as if the inconsistent provisions were not contained in the policy.

Affirmed.

Justice GRIFFIN, joined by Justices BRICKLEY and RILEY, dissenting, stated that the policy language at issue in this case is not inconsistent with the statute or the standard policy. While the Legislature used the term "the insured," instead of "any insured," nothing in the legislative history of the statute indicates that it intended to preclude the coverage exclusion at issue.

The real question is not whether the policy is to be construed to deny coverage to an innocent coinsured for the intentional wrongs of another insured, but whether MCL 500.2806(2); MSA 24.12806(2) and MCL 500.2832; MSA 24.12832, permitted modification of the statutorily mandated fire insurance policy so as to change the ambiguous term "the insured" to "any insured," as well as to create a new policy exclusion for intentional acts of "any person insured under the policy." Because the modifications reflected in the policy at issue are unambiguous and consistent with the statutory scheme, the term "any insured," as it is used in this policy, should be read to preclude recovery by an innocent coinsured.

198 Mich App 675; 499 NW2d 419 (1993) affirmed.

*Fabian & Sklar, P.C.* (by *Michael H. Fabian, Stuart A. Sklar,* and *Jo Robin Davis*), for the plaintiff.

*Tolley, Verwys, Vandenbosch & Walton, P.C.* (by *David L. Harrison*), for the defendant.

Amici Curiae:

*Donna K. Coker* for California Alliance Against

Domestic Violence and Ad Hoc Committee of Law Professors Working on Domestic Violence.

*John A. Lydick* for Auto Club Group Insurance Company.

*Monica Farris Linkner* for Michigan Trial Lawyers Association.

*Julie Kunce Field* for Women and the Law Clinic, *Suellyn Scarnecchia* for Women Lawyers Association of Michigan, *Susan G.S. McGee* for Domestic Violence Project, Inc./SAFE House, *Judith Armatta* for Oregon Coalition Against Domestic and Sexual Violence, *Barbara J. Hart* for Pennsylvania Coalition Against Domestic Violence, *Linda J. Wharten* for Women's Law Project, *Rebecca E. Shiemke* for Women's Justice Center, *Jo Prout* for Help-In-Crisis, Inc., *Shirley Farber Hukle* for YWCA of Enid, Oklahoma, *Judith J. Munaker* for Wisconsin Coalition Against Domestic Violence, *Georgia Rasco* for Oklahoma Coalition on Domestic Violence, *R. Satt Hayston* for Family Violence Intervention Services, *Janet E. Mickish* for Colorado Domestic Violence Coalition, and *Sherry Currens* for Kentucky Domestic Violence Association.

LEVIN, J. This Court granted leave to appeal, limited to the issue whether § 2832 of the Insurance Code,[1] providing the form of the standard fire insurance policy, "prohibits an insurer from denying coverage to an insured who is innocent of wrongdoing based upon the wrongdoing of any other coinsured." 444 Mich 935 (1994).

We hold that the provisions of the insurance policy issued by defendant State Farm Fire & Casualty Co., insofar as they deny coverage to an

[1] MCL 500.2832; MSA 24.12832, repealed by 1990 PA 305.

insured who is innocent of wrongdoing by another insured, are inconsistent[2] with the provisions of the standard policy, and, thus, contrary to the provisions of the standard policy, and are therefore void insofar as fire insurance coverage is involved. We further hold that State Farm is subject to liability under the policy to the plaintiff's decedent, who was an innocent insured, in the same manner and to the same extent as if the inconsistent provisions were not contained in the policy.[3]

I

Dennis Borman commenced this action against State Farm as personal representative of the estate of Lillian Roach to recover for the loss of personal property belonging to Roach that was destroyed in December, 1988, by a fire at an adult foster care home that her grandson, Gary Borman, was purchasing on land contract. The fire was set or arranged to be set by Gary Borman or persons in privity with him. Roach was not complicit in the wrongdoing.

The circuit court granted summary disposition

[2] The standard policy provided:

Added provisions.
The extent of the application of insurance under this policy and of the contribution to be made by this Company in case of loss, and any other provision or agreement *not inconsistent* with the provisions of this policy, may be provided for in writing added hereto, but no provision may be waived except such as by the terms of this policy is subject to change. [MCL 500.2832; MSA 24.12832. Emphasis added.]

[3] Any provision of a fire insurance policy, which is contrary to the provisions of this chapter, shall be absolutely void, and an insurer issuing a fire insurance policy containing any such provision shall be liable to the insured under the policy in the same manner and to the same extent as if the provision were not contained in the policy. [MCL 500.2860; MSA 24.12860.]

for State Farm relying on the basis of language in the policy excluding coverage for intentional wrongful acts by "any insured,"[4] citing this Court's decision in *Allstate Ins Co v Freeman,* 432 Mich 656; 443 NW2d 734 (1989). The Court of Appeals reversed, relying on this Court's decision in *Morgan v Cincinnati Ins Co,* 411 Mich 267, 276; 307 NW2d 53 (1981).[5]

II

In *Morgan,* Helen and Robert Morgan owned a home as tenants by the entireties. The home was extensively damaged by a fire started by Robert Morgan. Divorce proceedings were then pending.

The insurer claimed that the policy was voided when Robert Morgan intentionally started the fire. The insurer relied on the first sentence of the standard insurance policy prescribed by § 2832 of the Insurance Code.

Concealment, fraud.
This entire policy shall be void if, whether be-

---

[4] The homeowner's insurance policy issued by State Farm contained the following provision in § I—Conditions:

14. Intentional Acts. If you or *any person* insured under this policy causes or procures a loss to property covered under this policy for the purpose of obtaining insurance benefits, then this policy is void and we will not pay you or *any other insured* for this loss. [Emphasis added.]

The policy also contained the following provision in §§ I and II—Conditions:

2. Concealment or Fraud. This policy is void as to you and *any other insured,* if you or *any other insured* under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss. [Emphasis added.]

[5] 198 Mich App 675; 499 NW2d 419 (1993).

fore or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.[6]

In *Monaghan v Agricultural Fire Ins Co of Watertown, NY*, 53 Mich 238, 254; 18 NW 797 (1884), this Court ruled that an "attempt to defraud the company by any one of the insured, by the making of false affidavits in relation to loss, is a complete bar to a recovery upon the policy."[7]

In *Morgan*, this Court observed that "[s]ince the decision in *Monaghan* the law applicable to insurance contracts has undergone considerable development," in recognition of the disparity in the bargaining positions of insurers and consumers. The Court said: "both the statutory law and judicial decisions have aimed at making certain that the interests of every insured are protected." The Court said that it was "moved to limit the rule of law articulated in *Monaghan*."[8]

This Court rejected the insurer's contention that "*the* insured" should be read as "*any* insured," with the result that the entire policy would be void if any insured committed fraud. The Court in *Morgan* said "[w]e believe such a reading is unwar-

---

[6] MCL 500.2832; MSA 24.12832, repealed by 1990 PA 305.

[7] The mother of three minors, who owned a parcel of land and a house and barn on it by deed from their father, procured a fire insurance policy on the premises and contents, naming herself and the three minors as insureds.

The house was damaged by fire. The insureds denied the claim, asserting that their mother had committed fraud in reporting as destroyed items that she had removed before the fire. The Court construed the contract interests created by the insurance policy to be joint and "made the statement for which the case has come to be recognized, i.e., 'And if the right of action has become barred as to one of the joint contractors, it has to all of them.'" *Id.*, p 275.

[8] *Morgan, supra*, pp 275-276.

ranted," and read "the insured" as voiding the policy only in the event of fraud by the insured who committed the fraud. This Court said:

> We . . . hold that the provision voiding the policy in the event of fraud by "the insured" is to be read as having application only to the insured who committed the fraud and makes claim under the policy. The provision has no application to any other person described in the policy as an insured.
>
> *          *          *
>
> Henceforth whenever the statutory clause limiting the insurer's liability in case of fraud by the insured is used it will be read to bar only the claim of an insured who has committed the fraud and will not be read to bar the claim of any insured under the policy who is innocent of fraud.[9]

III

State Farm contends that *Morgan* does not govern disposition of this case because the homeowner's policy provides that the policy is void "as to you or any other insured" if any person insured under the policy causes or procures a loss to property covered under the policy for the purpose of obtaining insurance benefits, or intentionally conceals or misrepresents any material fact or circumstance and provides that in such event the insurer "will not pay you or any other insured for this loss."[10]

In *Morgan,* the insurer claimed that the first sentence of the standard policy bars recovery by an insured who seeks to defraud the insurer and by any other person insured under the policy,

---

[9] *Id.,* pp 276-277.

[10] See n 4 for the text of these provisions.

including an insured who is innocent of wrong-doing. This Court responded that the language of the standard policy applies only to the insured who committed the fraud and has no application to any other person insured under the policy. This Court thus read the standard policy as providing in effect for recovery by an innocent insured under that statutorily mandated fire policy.

The provisions in the homeowner's policy relied on by State Farm cover the same subject matter, fraud on the insurer, as the first sentence of the standard policy. While the standard policy contemplates "[a]dded provisions"—"any other provision or agreement *not inconsistent* with the provisions" of the standard policy[11]—because the provisions of the homeowner's policy relied on by State Farm cover the same subject matter as the first sentence of the standard policy, and provide for less coverage to innocent insureds than is mandated under the first sentence as construed by this Court in *Morgan,* the provisions of the homeowner's policy relied on by State Farm are "inconsistent with the provisions" of the standard policy and hence "absolutely void." Thus, State Farm is liable to Lillian Roach's estate, insofar as fire insurance coverage is involved, in the same manner and to the same extent as if the inconsistent provisions were not contained in the policy.[12]

IV

State Farm contends that *Morgan* was incorrectly decided. There were two opinions in *Morgan.* The concurring opinion, like the opinion for the Court, permitted recovery by the innocent

[11] See n 2 for text.

[12] See n 3 for text of § 2860 of the Insurance Code. Cf. *Chrysler Corp v Hardwick,* 299 Mich 696, 700; 1 NW2d 43 (1941); *Smart v New Hampshire Ins Co,* 428 Mich 236, 240; 407 NW2d 362 (1987).

spouse.[13] We have considered State Farm's arguments, and the analysis set forth in *Morgan,* and are not persuaded to change the rule there set forth.

This Court's decision in *Allstate Ins Co v Freeman, supra,* is not implicated. The language there construed was "an insured" rather than "the insured." The insurance policy in that case was not a fire insurance policy subject to the strictures of § 2832 establishing a standard policy.

In the years following this Court's decision in *Morgan,* the Legislature frequently amended the Insurance Code, but did not specifically respond to this Court's decision in *Morgan.* In 1990, the Legislature repealed § 2832, but may have, advertently or inadvertently, reenacted § 2832.[14] Section 2833(2), added in 1990, requires that each fire insurance policy "shall contain, at a minimum, the coverage provided in the standard fire policy under former section 2832."[15]

---

[13] One justice did not participate because her husband was the circuit judge.

[14] Section 3 of 1990 PA 305, approved December 14, 1990, with immediate effect, provides:

> Section 2832 of Act No. 218 of the Public Acts of 1956, being section 500.2832 of the Michigan Compiled Laws, is repealed effective January 1, 1992.

But § 1 provides that § 2832 and other sections "are *amended*" (emphasis added) "as follows:" Act 305 then sets forth, as if reenacted, MCL "500.2832 Form of standard policy. [MSA 24.12832]," and the language of repealed § 2832, providing for the form of the Michigan Standard Policy, verbatim as set forth in the act repealed by § 3.

The compilers of Michigan Compiled Laws and Michigan Statutes Annotated report that § 2832 was repealed by 1990 PA 305, and do not set forth the "reenacted" § 2832.

[15] It appears that a or the purpose of 1990 PA 305 was to facilitate redrafting of insurance policies to make them more readable and understandable by consumers. Senate Fiscal Agency, SB 490, February 15, 1991, respecting "Public Act 305 of 1990."

The parties disagree whether the Legislature intended. to permit insurers to make the kind of substantive change that State Farm has

Because the loss in the instant case occurred before the January 1, 1992, effective date of repeal of "former § 2832," we need not and cannot now decide whether the coverage provided in the home-owner's policy issued by State Farm is less than the "coverage provided in the standard fire policy under former section 2832" as a result of the provisions relied on by State Farm stating in effect that an innocent insured may not recover for a loss intentionally caused by another insured.

V

State Farm and amicus curiae Auto Club Group Insurance Company contend that barring recovery by innocent insureds is necessary to address the problems of affordability and cost control for the insurer and the consumer. State Farm asserts that when a home is destroyed by fire, State Farm usually incurs a net loss after the mortgage holder or loss payee is paid and any litigation is success-fully defended. It contends that homeowner's in-surance will become more affordable if the equity of innocent coinsureds is forfeited to fire insurers.

. Amici curiae on behalf of innocent coinsureds[16]

sought to bring about by the addition of the language set forth in n 4. 1990 PA 305 added § 2833 to the Insurance Code, which in pertinent part reads as follows:

> Except as otherwise provided in this act, each fire insurance policy issued or delivered in this state pursuant to subsection (1) shall contain, at a minimum, the coverage provided in the standard fire policy under *former section 2832*. [MCL 500.2833(2); MSA 24.12833(2). Emphasis added.]

[16] Michigan Trial Lawyers Association, and a brief by Women and the Law Clinic in behalf of the University of Michigan Women and the Law Clinic, Women Lawyers Association of Michigan, and organi-zations against domestic violence in Oregon, Pennsylvania, Oklahoma, Wisconsin, Colorado, Kentucky, and other locales, and another brief in behalf of California Alliance Against Domestic Violence and Ad Hoc Committee of Law Professors Working On Domestic Violence.

contend that many cases of homeowners' arson are related to domestic violence, and an inability of the innocent spouse to recover insurance proceeds may increase the guilty party's incentive to commit arson.[17]

We do not rest decision on any resolution of the merits of that policy debate.

## VI

We have reviewed the case law in other jurisdictions and find support for the view set forth in *Morgan* in cases construing "the insured" where a standard policy is prescribed by the legislature in *Osbon v Nat'l Union Fire Ins Co,* 632 So 2d 1158, 1160 (La, 1994); *Fireman's Fund Ins Co v Dean,* 212 Ga App 262, 265; 441 SE2d 436 (1994); *Hogs Unlimited v Farm Bureau Mutual Ins Co,* 401 NW2d 381, 384 (Minn, 1987); *Ponder v Allstate Ins Co,* 729 F Supp 60 (ED Mich, 1990).

We recognize that courts in other jurisdictions have enforced against innocent insureds contractual provisions voiding policies for fraud, concealment, or intentional acts by "an" or "any" insured, but in none of these cases did the court advert to any conflict with a standard policy prescribing a provision voiding the policy because of the wrongful conduct of "the insured."[18]

---

[17] It is contended that domestic violence is largely motivated by a desire of one spouse to control and dominate the other. That the abuser's desire to control is threatened when the abused partner attempts to leave the relationship, and the abuser may resort to threatening and actual conduct designed to constrain the abused partner to rejoin the abuser, and depriving the abused partner of a home for herself and her children may and has been part of the abuser's plans.

[18] In *Amick v State Farm Fire & Casualty Co,* 862 F2d 704, 706 (CA 8, 1988), the United States Court of Appeals for the Eighth Circuit, applying Missouri law held that a provision in an insurance policy, the substance of which is the same as the "Concealment or Fraud"

Affirmed.

CAVANAGH, C.J., and BOYLE and MALLETT, JJ., concurred with LEVIN, J.

GRIFFIN, J. I respectfully dissent.

Defendant State Farm's fire insurance policy precludes recovery by "*any* insured" if a coinsured has "intentionally concealed or misrepresented any material fact"; the Michigan standard policy precluded recovery by "*the* insured." (Emphasis added.) See MCL 500.2832; MSA 24.12832. Plaintiff Borman argues on appeal that use of the term "any insured" in defendant's policy violates the legislative intent underlying the standardized stat-

provision of the instant policy (see n 4 for text), in effect "barring recovery by innocent co-insureds if any other insured commits fraud," is not against public policy. The court summarized other cases relied on by Allstate.

> Several jurisdictions have held similar policy provisions are not against public policy because insurance providers should be able to refuse to bear the risk of loss to property intentionally caused by an insured. *Spezialetti v Pacific Employers Ins Co,* 759 F2d 1139, 1142 (CA 3, 1985) (court upholds policy language that bars "any insured" from recovery, "any insured" meaning any person covered under the insurance policy); *Bryant v Allstate Ins Co,* 592 F Supp 39 [41] (ED Ky, 1984) ("The court sees no injustice in requiring the company to pay only those risks it insured, where, as here, the coverages are spelled out in clear and unambiguous language"); *Bryan v Employers Nat'l Ins,* 294 Ark 219 [220]; 742 SW2d 557, 558 (1988) (an innocent co-partner could not recover under a policy where arson was committed by a partner because the language of the policy specifically barred recovery); *West Bend Mutual Ins Co v Salemi,* 110 Ill Dec 608; 158 Ill App 3d 241; 511 NE2d 785 (1987) (innocent co-insured not barred from recovery in the absence of contractual language which clearly expressed that intention) . . . .

In *Vance v Pekin Ins Co,* 457 NW2d 589, 592-593 (Iowa, 1990), and *Woodhouse v Farmers Union Mutual Ins Co,* 241 Mont 69, 70-72; 785 P2d 192 (1990), the Supreme Courts of Iowa and Montana similarly applied a contract analysis in holding that an innocent coinsured could not recover where the policy excluded intentional loss committed by or at the direction of "an insured."

utory policy. The majority has adopted plaintiff's reasoning and holds that the policy must not be construed to deny coverage to an innocent co-insured for the intentional wrongs of another insured.

However, I view this case from a different perspective. The real question is whether the statute, particularly MCL 500.2806(2); MSA 24.12806(2) and MCL 500.2832; MSA 24.12832, permitted modification of the statutorily mandated fire insurance policy so as to change the ambiguous term "the insured" to "any insured," as well as to create a new policy exclusion for intentional acts of "any person insured under the policy." Because the modifications reflected in the policy at issue are unambiguous and consistent with the statutory scheme, I would hold that the term "any insured," as it is used in this policy, precludes recovery by an innocent coinsured.

Resolution of the question before us requires analysis of the relevant contract and statutory provisions. The policy at issue excludes coverage when "any" insured intentionally conceals or misrepresents material facts:

> Concealment or Fraud. This policy is void as to you and *any other insured,* if you or *any other insured* under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss. [Emphasis added.]

The policy also excludes coverage to "any insured" when another coinsured causes or procures a loss:

> Intentional Acts. If you or *any person* insured under this policy causes or procures a loss to property covered under this policy for the purpose

of obtaining insurance benefits, then this policy is void and we will not pay you or *any other insured* for this loss. [Emphasis added.]

MCL 500.2806; MSA 24.12806 required insurers that issue fire policies in Michigan to adopt the "Michigan Standard Policy":

(1) The printed form of a policy of fire insurance, as set forth in section 2832, shall be known and designated as the "Michigan Standard Policy."

(2) No policy or contract of fire insurance shall be made, issued or delivered by any insurer or by any agent or representative thereof, on any property in this state, unless it shall conform as to all provisions, stipulations, agreements and conditions, with such form of policy.[1]

The origin of Michigan's standard policy can be traced to the establishment in New York of the National Board of Fire Underwriters, in the nineteenth century. Under the board's auspices, the first standard policy was drafted in 1886. Later, that policy became known as the "old" New York policy or the "112 line" policy. Since then, New York has drafted and adopted two new standard contracts: the 1926 "200 line" policy and the 1943 "165 line" policy. Most states (forty-two), including Michigan, have adopted the 1943 "165 line" policy.[2] It includes this pertinent provision:

Concealment, fraud. This entire policy shall be

---

[1] This section was amended in 1990 to read as follows:

A policy or contract of fire insurance shall not be made, issued, or delivered by an insurer or by an agent or representative of an insurer, on any property in this state, unless it conforms to the provisions of this chapter. [MCL 500.2806; MSA 24.12806.]

[2] See defendant's brief on appeal, addendum, item 8, Ins L Rep (CCH), Fire and Casualty, ¶ 52,003.

void if, whether before or after a loss, *the insured* has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto. [MCL 500.2832; MSA 24.12832.[3] Emphasis added.]

This fraud provision in the Michigan standard policy has been interpreted by this Court to allow recovery by an innocent coinsured despite the wrongdoing of another coinsured. *Morgan v Cincinnati Ins Co,* 411 Mich 267; 307 NW2d 53 (1981). In *Morgan,* the plaintiff and her husband owned a home, as tenants by the entireties, that was insured by the defendant. The husband purposely set fire to the home, causing extensive damage. The insurer refused to pay the plaintiff, claiming that because she and her husband owned inseparable interests in the property as tenants by the entireties, the husband's fraud was imputed to the plaintiff. The insurer further argued that the standard policy at issue, which incorporated "the insured" language of § 2832, precluded coverage of the plaintiff. Applying § 2832 to the fire insurance policy, the *Morgan* Court resolved the ambiguity of the statutory term "the insured" in favor of the plaintiff and stated:

The insurer in this case would have us read this provision as if it stated "[t]his entire policy shall be void if . . . *any* person *insured*" has committed fraud. We believe such a reading is unwarranted, and hold that the provision voiding the policy in the event of fraud by *"the insured"* is to be read as having application only to the insured who committed the fraud and makes claim under the pol-

---

[3] As the majority notes, in 1990, the Legislature repealed § 2832, but may have, advertently or inadvertently, reenacted § 2832. See majority opinion, *ante,* p 490.

icy. The provision has no application to any other person described in the policy as an insured.

\* \* \*

Henceforth whenever the statutory clause limiting the insurer's liability in case of fraud by *the insured* is used it will be read to bar only the claim of an insured who has committed the fraud and will not be read to bar the claim of any insured under the policy who is innocent of fraud. [*Morgan, supra,* pp 276-277. Emphasis added.]

Obviously, *Morgan* did not address the effect of § 2832 or other provisions of the Insurance Code in the present context where more explicit and unambiguous policy language has been used. Rather, it dealt only with the limited situation in which the statutory language of § 2832 was set forth verbatim in an insurance contract.

We do not read this Court's decision in *Morgan* as mandating coverage for all innocent coinsureds under all circumstances. Indeed, *Morgan* took pains to provide instruction concerning the use of unambiguous language in policy provisions governing innocent coinsureds:

We no longer consider the application of the theory of implied suretyship appropriate in insurance law. *In Michigan limitations on recovery under an insurance policy must be clearly stated in the contract.* The implication of a mutual obligation of suretyship among several insured persons is in effect a limitation on recovery by implication and not to be permitted under Michigan law.

Furthermore, since the provision quoted above does not expressly create a joint obligation of suretyship, to read the fraud provision as creating one would be contrary to the reasonable expectations of an insured. *An ordinary person seeing his or her name included in an insurance contract*

*without limiting language would suppose his or her interest to be covered.* It appears that the instant policy names "Robert Morgan and Helen Morgan," without more, as the insured under the policy. [*Id.,* p 277. Emphasis added.]

In response to *Morgan,* defendant, as well as many other insurers, have revised their fire poli-' cies to make the language unambiguous. As a result, defendant's policy includes an intentional act provision, and language in the fraud provision has been modified to make clear that it applies to "any insured," rather than to "the insured," thereby rectifying the *Morgan* concern that the "the insured" language was not sufficiently explicit.[4]

When the language of an insurance policy is clear and unambiguous, the contract should be enforced. *Fresard v Michigan Millers Mutual Ins Co,* 414 Mich 686, 693-694; 327 NW2d 286 (1982); *Raska v Farm Bureau Mutual Ins Co,* 412 Mich 355, 361-362; 314 NW2d 440 (1982). Here, the policy's language excluding coverage for the concealment or fraud by "you or any other insured" unambiguously excludes an insured, even an innocent one. This Court has already interpreted the

_____

[4] In note, *The problem of the innocent co-insured spouse: Three theories on recovery,* 17 Val L R 849, 872 (1983), the author commented on the various suggested policy modifications as follows:

> Perhaps the best solution to the entire problem is to revise the policy language. If the insurance companies intend the fraudulent acts of one spouse to void the policy as to both, the policy should be redrafted to reflect this position. The desired result could be obtained by substituting the term "the" insured in the fraud provision with "a," "any" or "an" insured. Drafting the policy to expressly deny recovery not only serves the interests of the insurance companies but also advances the public good by discouraging fraud.

See also comment, *Spouse's fraud as a bar to insurance recovery,* 21 Wm & Mary L R 543, 549-554 (1979).

term "any insured" to include an innocent in-
sured. Cf. *Allstate Ins Co v Freeman,* 432 Mich
656, 692-700; 443 NW2d 734 (1989). See also *All-
state, supra,* p 748 (CAVANAGH, J., concurring in
part and dissenting in part).

Moreover, while the insurance commissioner can
reject insurance contracts that conflict with the
statute, *Franklin Life Ins Co v Comm'r of Ins,* 159
Mich 636; 124 NW 522 (1910), the commissioner
explicitly approved the instant policy.[5] Evidence of
approval by the commissioner "should be some-
what persuasive of its compliance with the stat-
ute." *Drogula v Federal Life Ins Co,* 248 Mich 645,
648; 227 NW 692 (1929); *Progressive Mutual Ins
Co v Taylor,* 35 Mich App 633, 643; 193 NW2d 54
(1971).

Plaintiff maintains, nonetheless, that approval
by the commissioner cannot overcome the "inten-
tion of the language of the Legislature . . . ."
*Ponder v Allstate Ins Co,* 729 F Supp 60, 62 (ED
Mich, 1990). Our attention has been called to no
evidence that the Legislature even contemplated
whether an innocent coinsured could recover de-
spite the wrongdoing of another insured. Instead, a
reading of the entire statutory standard policy
strongly suggests that the Legislature was con-
cerned about the problem of fraud and the need to
keep homeowner insurance affordable. We further

---

[5] MCL 500.2236(1); MSA 24.12236(1) provided:

   No basic insurance policy form or annuity contract form
shall be issued or delivered to any person in this state, and no
application form where a written application is required and is
to be made a part of such policy or contract, no printed rider or
indorsement form or form of renewal certificate, and no group
certificate in connection with any such policy or contract, shall
be issued or delivered to any person in this state, until a copy
of the form thereof is filed with the department of insurance
and approved by the commissioner as conforming with require-
ments of this code and not inconsistent with the law.

note that in adopting the "165 line" Michigan
standard policy, the Legislature provided no indi-
cation of intent to change the existing Michigan
jurisprudence on the point here at issue. Before
*Morgan,* an "attempt to defraud the company by
any one of the insured, by the making of false
affidavits in relation to loss, is a complete bar to a
recovery upon the policy." *Monaghan v Agricul-
ture Fire Ins Co of Watertown, NY,* 53 Mich 238,
254; 18 NW 797 (1884). Thus, we suggest that this
Court should view approval by the commissioner
as evidence of compliance with the statute.

Additionally, this Court should look to the statu-
torily mandated policy itself, which provides in
pertinent part:

> This policy is made and accepted subject to the
> foregoing provisions and stipulations and those
> hereinafter stated, which are hereby made a part
> of this policy, *together with such other provisions,
> stipulations and agreements as may be added
> hereto,* as provided in this policy.
>
> * * *
>
> Added provisions. The extent of the application
> of insurance under this policy and of the contribu-
> tion to be made by this Company in case of loss,
> and *any other provision or agreement not inconsis-
> tent with the provisions of this policy, may be
> provided for in writing added hereto,* but no provi-
> sion may be waived except such as by the terms of
> this policy is subject to change. [MCL 500.2832;
> MSA 24.12832. Emphasis added.]

Obviously, the statute and this portion of the
standard policy contemplate that provisions other
than those set forth may be added to the contract
of insurance as long as they are in writing and
consistent with § 2832. The fraud and intentional-
loss provisions in controversy are clearly set forth
in writing, and the only question is whether they
are consistent with the statutory scheme.

In support of the insurance contract at issue, defendant points out that a number of other jurisdictions have allowed similar modifications to the same statutory 165-line insurance policy. See, e.g., *Vance v Pekin Ins Co*, 457 NW2d 589 (Iowa, 1990); *State Farm Fire & Casualty Ins Co v Kane*, 715 F Supp 1558 (SD Fla, 1989); *Sales v State Farm Fire & Casualty Ins Co*, 849 F2d 1383 (CA 11, 1988); *Amick v State Farm Fire & Casualty Co*, 862 F2d 704 (CA 8, 1988); *Bryant v Allstate Ins Co*, 592 F Supp 39 (ED Ky, 1984); *Spezialetti v Pacific Employers Ins Co*, 759 F2d 1139 (CA 3, 1985). In these cases, use of the term "any insured" was held to be appropriate.[6] Although the issue was not always addressed in terms of modifying the statutory policy, affirmance of conformity and consistency

---

[6] For instance, in *Spezialetti,* the court considered the rights of an innocent coinsured spouse, who sought to recover insurance proceeds on jointly owned premises destroyed by the arson of the other spouse. The defendant insurance company asserted that there was no coverage because a fraudulent act was committed by "any insured." The federal circuit court upheld summary judgment in favor of the insurer:

> Although often not expressed, the major concern of the cases denying recovery is the fear of collusion and fraud. Particularly in the husband and wife cases, an equally guilty spouse might recover policy proceeds because of the difficulty of proving participation in or knowledge of the arson committed by the other spouse. *See generally, Note, The Problem of the Innocent Co-Insured Spouse: Three Theories on Recovery,* 17 Val L R 849 (1983). To overcome this problem, the parties may pre-ordain the result by clear and unambiguous contract terms. 12 Appleman, Insurance Law & Practice, § 7004, at 37-43 (1981).
> The policy terms in some cases have been less than specific. In *Opat* [v *State Farm Fire & Casualty Ins Co,* 542 F Supp 1321 (WD Pa, 1982)], *Giacobetti* [v *Insurance Placement Facility of Pennsylvania,* 500 Pa 447; 457 A2d 853 (1983)], and *Kellner* [v *Royal Indemnity Co,* 605 F Supp 326 (MD Pa, 1984)], the policy used the term "the insured." That phrase admits of some uncertainty when used in circumstances where the various persons covered by the policy have adverse or joint interests . . . .
> That deficiency does not exist here where the policy refers to "any insured," not "the insured." The district court correctly

with the 165-line policy is implicit in these decisions.[7]

I conclude that the policy language at issue in this case is not inconsistent with the statute or the standard policy. While the Legislature used the term "the insured," instead of "any insured," nothing in the legislative history indicates that it intended to preclude the coverage exclusion at issue here.

Accordingly, I would reverse the decision of the Court of Appeals.

BRICKLEY and RILEY, JJ., concurred with GRIFFIN, J.

---

focused on the language of the policy and found that it denied coverage for a loss caused by a dishonest act of "any" insured. It had been established that Fiorangelo, a named insured, set the fire. That being so, he was covered by the term "any insured" and by its terms the exclusion applied. [759 F2d at 1141-1142.]

[7] A few courts have specifically addressed whether a mandate similar to MCL 500.2806(2); MSA 24.12806(2) requires exact conformity with the statutory policy and have concluded that an insurer cannot deviate from the statutorily defined policy. See, e.g., *Ponder v Allstate Ins Co, supra; Fireman's Fund Ins Co v Dean,* 212 Ga App 262; 441 SE2d 436 (1994); *Osbon v Nat'l Union Fire Ins Co,* 632 So 2d 1158 (La, 1994). However, in two of these cases (*Dean* and *Osbon*) the respective state statutes require that coverage must be equivalent to or exceed the provisions of the statutorily mandated policy. Michigan's statute only provides that additional terms cannot be inconsistent. MCL 500.2832; MSA 24.12832.